# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

STAR U. HOLLOMAN,

v.                           Civil Case No. ELH-17-2426

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,[1]

* * * * * * * * * * * * *

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2014–01, the above-captioned case has been referred to me to review the parties' dispositive motions and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). [ECF No. 4]. Plaintiff Star U. Holloman, who proceeds *pro se*, filed this appeal of the denial of her claim for benefits by the Social Security Administration ("the Commissioner"). [ECF No. 1]. The Commissioner filed a Motion for Summary Judgment on April 19, 2018. [ECF No. 16]. On April 20, 2018, the Clerk's Office sent a Rule 12/56 letter to Ms. Holloman, advising her of the potential consequences of failing to oppose the Commissioner's Motion. [ECF No. 17]. Ms. Holloman has not filed a response. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will recommend that the Court grant the Commissioner's motion and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Currently, the position of Commissioner of the Social Security Administration is vacant, and most duties are fulfilled by Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security.

On March 8, 2013, Ms. Holloman filed her claim for Supplemental Security Income ("SSI"), alleging a disability onset date of May 4, 2009. (Tr. 134). Her claim was denied initially and on reconsideration. (Tr. 88-91, 96-97). On March 9, 2016, a hearing was held before an Administrative Law Judge ("ALJ"). (Tr. 30-68). Following the hearing, the ALJ issued an unfavorable decision on August 30, 2016. (Tr. 12-29). The Appeals Council denied Ms. Holloman's request for further review, (Tr. 1-6), so the ALJ's 2016 decision constitutes the final, reviewable decision of the Agency.

The ALJ found that, during the relevant time frame, Ms. Holloman suffered from the severe impairment of affective disorders. (Tr. 17). Despite this impairment, the ALJ determined that Ms. Holloman retained the residual functional capacity ("RFC") to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand and remember simple instructions; she is able to execute simple tasks on a consistent basis (two hours at a time with normal breaks for a complete 8-hour workday); and she is limited to occasional interaction with others and little to no change in the work setting.

(Tr. 19). After considering testimony from a vocational expert ("VE"), the ALJ determined that there were several jobs existing in significant numbers in the national economy that Ms. Holloman could perform. (Tr. 23-24). Thus, the ALJ concluded that Ms. Holloman was not disabled. (Tr. 24).

I have carefully reviewed the ALJ's opinion and the entire record. *See Elam v. Barnhart*, 386 F. Supp. 2d 746, 753 (E.D. Tex. 2005) (mapping an analytical framework for judicial review of a *pro se* action challenging an adverse administrative decision, including: (1) examining whether the Commissioner's decision generally comports with regulations, (2) reviewing the ALJ's critical findings for compliance with the law, and (3) determining from the evidentiary

record whether substantial evidence supports the ALJ's findings). For the reasons described below, substantial evidence supports the ALJ's decision.

At step one, the ALJ found in Ms. Holloman's favor, concluding that she had not engaged in substantial gainful activity since her application date. (Tr. 17). At step two, the ALJ found the above-listed severe impairment, and found that any other alleged impairments—including anemia, chronic obstructive pulmonary disorder ("COPD"), asthma, and hypertension were not severe. *Id.*

At step three, the ALJ determined that Ms. Holloman did not have an impairment or combination of impairments that met or medically equaled the criteria set forth in any listings. (Tr. 18-19). Specifically, the ALJ determined that Ms. Holloman's impairment did not meet Listing 12.04. *Id.* Listings 12.00 *et. seq.*, pertain to mental impairments. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00. The relevant listings therein consist of: (1) a brief statement describing a subject disorder; (2) "paragraph A criteria," which consists of a set of medical findings; and (3) "paragraph B criteria," which consists of a set of impairment-related functional limitations. *Id.* § 12.00(A). If both the paragraph A criteria and the paragraph B criteria are satisfied, the ALJ will determine that the claimant meets the listed impairment. *Id.*

Paragraph B consists of four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § 404.1520a(c)(2). The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. *Id.* § 404.1520a(c)(4). In order to

satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation. *See, e.g.*, 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. Marked limitations "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with [the claimant's] ability to function." *Id*. § 12.00(C).

The functional area of "concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id*. at § 12.00(C)(3). Social Security regulations do not define limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id*. Further, the regulations offer little guidance on the meaning of "moderate" limitations.

In applying the special technique for consideration of mental impairments, the ALJ concluded that Ms. Holloman had only "mild" restriction in daily living activities, and "moderate" difficulties in social functioning and concentration, persistence, or pace. (Tr. 18). The ALJ further found that Ms. Holloman had experienced no episodes of decompensation. *Id*. In reaching these conclusions, the ALJ considered Ms. Holloman's reported daily activities, including keeping her house very clean, cooking, washing dishes, laundering, sweeping, mopping, vacuuming, and completing personal tasks. *Id.*; *see* (Tr. 51-55, 60, 183-84). Moreover, in considering social functioning, the ALJ considered Ms. Holloman's ability to attend appointments, pay bills, and socialize with members of her family. (Tr. 18); *see* (Tr. 53-54, 184-85). With respect to concentration, persistence or pace, the ALJ noted Ms. Holloman's assertions that she did not want to take any medication and had no difficulty crocheting,

4

watching television, paying bills, or counting change. (Tr. 18); *see* (Tr. 44, 52, 57, 184). Finally, the ALJ noted that Ms. Holloman has never sought formal mental health treatment and has never been hospitalized as a result of her mental impairment. (Tr. 18); *see* (Tr. 327). In light of the ALJ's findings, I have carefully reviewed the record, and I agree that no listings are met.

In determining the RFC assessment, the ALJ summarized Ms. Holloman's allegations about her inability to work, and found that Ms. Holloman's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 21). In particular, the ALJ determined that, despite Ms. Holloman's allegations, the record reflected that she was "capable of substantial and independent activities of daily living." *Id.* Most important to the ALJ, "the medical evidence of record [was] void of objective evidence to support a more restrictive RFC." *Id.* However, the limited amount of medical evidence available, according to the ALJ, also conflicted with Ms. Holloman's allegations. Specifically, the ALJ explained that Ms. Holloman's: (1) March 14, 2011 treatment notes from JAI Medical Center demonstrated that she had a history of depression, but that no medication was prescribed nor a follow-up recommended; (2) March 18, 2012 examination with Maryland General Hospital ER revealed normal psychiatric symptoms and that, at that time, she was not taking any medication; and (3) March 27, 2012 examination with Maryland General Hospital Clinic demonstrated that, despite being prescribed medication for depression, she did not want to take it and also refused to stop smoking. *Id.*; *see* (Tr. 238, 252, 266-70, 277, 279, 282). Moreover, treatments notes from Total Health Care from December 20, 2013 through March 2016 demonstrated normal physical findings, including no wheezing, no shortness of breath, and normal breath sounds with good air movement. (Tr. 21); *see* (Tr. 357, 360, 370, 372, 376, 378, 381, 386, 388, 390, 392, 394, 400). The Total Health Care records also

demonstrated that Ms. Holloman's mental status examinations revealed good judgment, normal mood and affect, and stable sleeping.  (Tr. 21); *see* (Tr. 354, 360, 366, 372).

The ALJ also assigned partial weight to the opinion, upon reconsideration, of the non-examining State agency consultant.  (Tr. 21).  Specifically, the ALJ assigned great weight to the consultant's findings that Ms. Holloman could execute simple tasks, adjust to simple changes, and make simple decisions, however, accorded little weight to the consultant's finding that Ms. Holloman was capable of "appropriate socialization."  (Tr. 21-22); *see* (Tr. 76).  Instead, as discussed above, the ALJ afforded Ms. Holloman additional limitations in social functioning "to account for evidence of limitations received at the hearing level."  (Tr. 21-22).  Moreover, the ALJ thoroughly considered the results of Ms. Holloman's consultative examinations with Drs. Stephen Hirsch, Gregory Ross, and Daniel Arnheim.  For example, Dr. Hirsch's mental status examination revealed that Ms. Holloman: (1) exhibited a neutral mood; (2) scored a 26 out of a possible 30 points on her mini mental status examination; and (3) appeared able to understand simple and complex instructions without becoming a distraction to supervisors or coworkers. (Tr. 22); *see* (Tr. 327-31).  Further, the ALJ afforded weight to Dr. Ross's physical examination, which revealed that Ms. Holloman could sit, stand, walk, handle objects, hear, speak and travel. (Tr. 22); *see* (Tr. 334-37).  Finally, the ALJ discussed at length the opinion of Ms. Holloman's treating therapist, Monica Boddie.  (Tr. 22-23).

Ultimately, my review of the ALJ's decision is confined to whether substantial evidence, in the record as it was reviewed by the ALJ, supports the decision and whether correct legal standards were applied.  *Richardson v. Perales*, 402 U.S. 389, 390, 404 (1971).  Even if there is other evidence that may support Ms. Holloman's position, I am not permitted to reweigh the evidence or to substitute my own judgment for that of the ALJ.  *Hays v. Sullivan*, 907 F.2d 1453,

1456 (4th Cir. 1990). In considering the entire record, I find the ALJ's RFC determination was supported by substantial evidence.

Continuing at step four, the ALJ found that Ms. Holloman had no past relevant work. (Tr. 23). At step five, the ALJ posed a hypothetical question to the VE to determine whether a person with Ms. Holloman's RFC would be able to find work. (Tr. 23-24); *see* (Tr. 64-66). The VE cited several jobs in response to that hypothetical, including "Laundry Worker," "Vehicle Cleaner," and "Packer," and the ALJ relied on that VE testimony in his opinion. (Tr. 23-24); *see* (Tr. 64-66). Accordingly, I again find that the ALJ's determination was supported by substantial evidence.

**CONCLUSION**

For the reasons set forth above, I respectfully recommend that the Court GRANT Defendant's Motion for Summary Judgment, [ECF No. 16], and order the Clerk to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Federal Rule of Civil Procedure 72(b)(2) and Local Rule 301.5(b).

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from

challenging on appeal the findings and conclusions accepted and adopted by the District Judge, except upon grounds of plain error.

Dated: May 21, 2018

/s/
Stephanie A. Gallagher
United States Magistrate Judge